Good morning, Your Honors. Jonathan Stieglitz for Appellant Daniel Torres. Thank you, Your Honors, for allowing us to give oral argument here today. May it please the Court. Mr. Torres' briefing goes through a number of matters and bases for appeal. I am ready and able to discuss all such bases, but I will begin by focusing on the fact that the District Court erred by considering the determinations applied to Mr. Torres' receipt of benefits for emergency medical services he required under an abuse of discretion standard of review. This necessary change to the District Court's analysis alone requires vacating the District Court's decision and remanding for reconsideration by the District Court in light of the proper de novo standard of review. What would be different if it was reviewed de novo? Abati is clear that, and the case that it cites through Jebian, it seems to indicate in the to abuse of discretion. They had a reasonable basis. I think there were significant facts, and I think that it doesn't make a difference because once you, when you're looking at something from a de novo perspective instead of giving... But what would change? I think the, I give you the standard would be different, but what would change it? As I understand it, our case law says, you know, it does need to be remanded if it's a different standard, but there's also cases that say that would be harmless because we can look at it and the same result would apply. The only case I've seen from the Ninth Circuit, which my opposing counsel has mentioned, is a case of Ross versus Paul Revere, and in that case, the District Court actually specifically discussed how even under a de novo standard of review, the court wouldn't have changed its opinion. It wouldn't have done anything differently. Here, our District Court judge never was, she didn't make that determination, and every single portion of the decision discussed abuse of discretion and giving all deference to United. So I think that, I think that Abati and the Ninth Circuit specifically says that, and then I have the quote from, actually went in, I didn't put this into, from Jabian, I apologize for butchering the name, it indicates, this is the case that Abati cites to, is now that we have clarified that de novo review is appropriate, the trial court must have an opportunity to determine whether to admit such additional evidence. Well, yeah, so you've answered that question that basically if it's the wrong standard of review, we have to send it back. But if that is not the case, can you offer us anything as to why the standard of review would make a difference, or something specific as to this case, something from the record? So I think that there's significant items within the record, such as, I mean, I point to a case that I recently, I personally recently tried, an ERISA case, it was M. Surge Care v. Oxford, which happens to be also an entity that's affiliated with United, in which the United, the language of the plan said, the, based off of the, I apologize, it's the same, it's the same language saying, based off of the law of the State, based off of the prevailing law, same language. And in that case, the, it ended up that the plan pays based off of a data source called Fair Health, which pays significant, which is a significantly higher payment rate than 250% of Medicare. In this particular case, this OCM program item, which was brought up, I think, completely unfairly, way after, after the, all of the deadlines in the case, this OCM program screenshot that United produced in this case, and after we even moved for leave to amend, it says that they pay based on 250% of Medicare. I don't believe that that's true. I think that that was all conjured together for the purposes of litigation. They went back and they manufactured it. If it really existed, why wasn't it produced initially as part of the administrative record? There's significant questions here relating to everything that went on in this case, in terms of the administrative record. And I think under the de novo standard review, we would have the opportunity to... Well, and I thought one of the points, I mean, you keep sticking to the administrative record. I thought one of the points was de novo review, we wouldn't be limited. Correct. So we wouldn't be, we wouldn't be, we wouldn't be limited to it. But what, I guess I'm still not sure I've heard what would actually change the outcome. So the expectation perhaps would be that this fair health rate that I talked about in this MSurgCare case, which again is exact same, exact verbatim, the exact same language that this, that the district court relied upon. In that case, they paid based on something called fair health, which again is a much higher percent, much higher rate, as opposed to 250% of Medicare. And there's, and under the de novo standard, we'd be able to conduct discovery, be able to find out whether or not, whether or not this is actually true, that this OCM program was the actual payment methodology. Can you tell us, as I recall, for the primary surgeon, it was, the 250% was 1,700 or something like that, maybe? Yeah, it was 1,700. So what would the, can you tell us what that, what would that rate be, the other rate you're saying would be significantly higher? So like three times that, is it ten times that? I mean, for example, it was, it was, so $1,700, so in the, this MSurgCare case, the payment rate which we've now had, because it got remanded and they've now reprocessed it, they're paying about $17,000, so that's like ten times as much. For the same exact sort of procedure? I believe it's for the very similar, the same procedure, I believe so. And Can you explain something? So let's say you get, you were to get that, we send it back, you get that, you get $17,000 and the second surgeon or whatever gets, I'm assuming, some amount less, right? I'm just trying to figure out, what is this, what is this case about? Like, why is this worth it to, it's got to be costing more than, than the difference between, you know, between the $1,700 your client got or would have got and the $17,000, even if your client got ten times, why is this case worth it? For, from, from my Trying to set precedent, or I'm just trying to figure out I mean, I don't think so, I mean, yes, yes and, but I mean Well, but our decision wouldn't, would our decision be precedent in this? For the, for the purposes of the standard review, I think it's certainly significant. That I for sure, I for sure believe. But, and so I think, if you want to, if you want to really dig into the granular, into my mindset, was probably I wouldn't have pursued this case up through the Ninth Circuit, but, but for the fact that the standard review was completely implied incorrectly. So, for example, I, so, from my mind, it was, if, if the Court had done its analysis Your big reason for being here is Is the standard review The standard review affects not just this case, but other cases It affects all cases, and it certainly, and it affects this case. The District Court needs to be afforded the opportunity, in all cases, District, the District Courts need to be afforded the opportunity when you're dealing with the California health plan. When you're dealing with the California health plan, the District Court needs to be afforded the opportunity of conducting the correct standard review, which is de novo in this case. So there's, I'll just, I'll just turn to the, the other matter, which was, which is the other basis for our appeal, which was the, which was leave to amend, which was not granted to us. Let me see here. Sorry, my apologies. And I just, I wanted to underscore this, this point relating to leave to amend. I understand that all District Courts, and for the same reason they should be given the opportunity to conduct the proper standard review, all District Courts should be able to manage their calendar, however they. So, we're familiar with your arguments on leave to amend. Okay. But the, the one practical problem it seems to me you have with your leave to amend is you, this case was both the, the surgeons, which is all that's left now, I think, but it also was. Reverse, Your Honor. Yet worse, okay. It was the surgeons and it was the, the patient, right? And now all it is is just the patient.  And, but if it was both, and I assume maybe it was you that was representing them, how, how could you, the story you tell us, we didn't, we didn't know until they dropped this late file, or this late produced material. Yes, Your Honor. That we, that, that they had failed to negotiate. But if you were representing the surgeons too, how could you not know that they had failed to do whatever you're saying? Because you know what they provided to, to the surgeons. Yes, Your Honor. It's not just that they failed to negotiate. It's that, it's the, it's the manner in which they, it's the, it's the manner in which that all went about. It's that, it's that nothing, not, so yes, they might have been phone calls and there might have been. But if you're representing both the patient and you're representing the, the doctors, you know what was told the patient. Because I understand your argument is something like they were telling the patient that they were doing all this stuff, but they weren't really doing it. But you're also on the other end of the telephone call. Sure. You know what phone, you know what you're getting and what you're not getting because you're representing the, the surgeons too. So the, I just, as a practical matter, it's hard for me to see how you were somehow like, oh wow, we didn't know until we got this document. I think we didn't know. We knew that they didn't negotiate, Your Honor. We absolutely knew they didn't negotiate. That's not a question. The question is did we have the evidence to support that, that they, that the, that all of the documents lined up such that we could even bring the claim. My argument is, I mean, you don't have to have evidence, hard evidence in order to, to make a claim. You do have to have a good faith basis for making it. But, I mean, it seems that you would have had a good faith basis. But I think when the new, I think there's, the case law is supportive of the fact that when the new evidence comes in, you still should have that right to be able to, to seek leave to amend. I mean, if you look at the procedural history of this case, we started with. But the new evidence, I mean, the new evidence didn't tell you anything you didn't already know. It did. It, it made the case. Not, not as to the claims that you wanted to make. It, it, it certainly, it made our, it, it, in my opinion, it made the case as opposed to before, it was just complete conjecture. It was like, okay, so they didn't, so they didn't negotiate. But did we know the timeline to say that, like, they, they were supposed to negotiate then, and then they just simply pocketed it and did nothing with it? No, you did know. That's, that's my point. You did know that because you knew what they had done, what they had told the patient. And you also knew the conversations and the, the correspondence they'd had with the surgeon. So, there was no, I understand your point that, you know, you needed the evidence to prove your claim. But I just don't, I'm, I'm really struggling with the idea that you were sitting there and, and you learned something that would allow you to make a claim that you couldn't make before by what they produced. I understand, that may have been the, the silver bullet you needed to prove your claim. But to know that that claim exists, I don't know. I'm struggling with that. Maybe you're, maybe you're right, Your Honor. Maybe you're right that, that perhaps we could have, we could have alleged it. I'm not saying we couldn't have alleged it. I mean, perhaps we even could have. And look, I've, I've, I've filed breach of fiduciary duty claims. And it's an abuse of discretion. So if you concede that you could have alleged it and the district could have said it. But, Your Honor, I, I've filed, I've filed breach of fiduciary duty claims relating to, I've filed breach of fiduciary duty claims relating to ERISA in the central district, in the central district. And they've been dismissed left and right. Until I literally have the evidence, until I literally had the documents, I, I, I did not believe that I was going to be able to, to proceed with that claim. And so once we had that evidence, then I, that was the time in which we, we then brought it. I, I can, I can cite numerous examples where I've brought breach of fiduciary duty claims and they've been fought by United and they've been dismissed by numerous courts. So it's, I don't think it's so fair to put us in the position where, like, I'm getting, I'm getting these cases also dismissed, but at the same time, I, I should still bring it. To my mind, once I have the evidence I have, once I have the ability to bring it, then I should bring it. I don't, but before that, to, to base it on, the Iqbal Twombly standard has been used to dismiss so many of my claims on so many, on so many instances. And I, I want to reserve the rest of my time, so I'll, I'll, I'll, I'll leave it over. Here from the other side. Good morning, Your Honor. May it please the Court. Kahn Skolnick for the defendant Napoli, UnitedHealthcare. I'd like to start with where the court was, where the court started is on, on why it all matters, the standard of review. My, my, my friend was referring to the Abati case. Abati was a, an en banc decision of this court, where this court reversed a prior standard, it overruled a prior standard, and so it necessarily sent it back to the district court to apply a brand new standard. That's not what happened here. Here, of course, regardless of the standard of review, this was a purely legal question. If we step back, what is the claim? The claim is not that, that the, the planned documents were somehow misapplied or that there was coverage or not coverage for a particular surgery. Here, there's no question the surgery was covered. It was an emergency surgery, took about two hours. The, the surgery was covered under the terms of the policy. The only question is whether the doctors are owed more money. And, and as Your Honor pointed out, it's not the doctors who are here, it's the patient suing essentially to recover money for the doctors. And so that's, that's what's going on here. And the, the only claim is that the doctors were owed more money, and the only basis for that is under the terms of the plan. And the question under the terms of the plan is whether the plaintiff, the, the appellant here, has identified any. It seems like the, the, the crux is whether or not health insurance is a form of disability insurance, falls within disability insurance. And I understand your sort of plain text argument that, you know, most of us probably don't think of health insurance being part of disability insurance. And that was when I first came to this case and I looked at it. I thought, yeah, that kind of makes sense. But it does appear as if that's how the California courts have, you know, have looked at it. And they, there's multiple cases that say that health insurance is part of disability insurance. So if you assume for a second, I'm not asking you to concede it, but if you assume for a second that health insurance is part of disability insurance and so it should be a de novo review, what do we do with that? I believe if, on those assumptions, Your Honor, I, I believe that the court still can and should affirm. Because the, the nature of the claim here is not something to which deference or discretion matters. The nature of the claim here is that the, the insurance company did not pay enough money. The, the rationale for that is under the terms of the plan. And the plan says, it's undisputed what the plan says, the plan says you have to pay in accordance with law. It's the plaintiff's burden in the district court and on appeal to show what law we didn't comply with. What, what, what legal obligation to pay more than UnitedPay did the plaintiff identify. And to date, the only law that the plaintiff and the appellant has identified is the, the Department of Managed Healthcare regulations that have this reasonable and customary standard in it. The district court said, that doesn't apply. That, that, that is not a legal obligation to which an insurance company, not a, not an HMO, but an insurance company is subject. So the, the, the plaintiff's burden is to identify a law, an applicable law that requires United to pay more. The plaintiff and the appellant on appeal has almost abandoned that issue. But why, why did the district court apply abuse of discretion if it, if it was just a legal issue? I mean, why, why didn't they just dismiss and say, I, I mean, I guess it would be in the alternative. It, it, it, so the, the district court didn't phrase it that way. The district court said, even if it was de novo, I would, I would come out this way. Admittedly, that's not what the opinion says or the decision says. Frankly, Your Honor, the parties briefed the standard of review. The standard of review is something that this, as Your Honor can tell, this is a, a, a set of parties that are frequently against each other. So this standard of review issue comes up in those cases. So that's just how it proceeded in the district court. They briefed it. The court was asked to decide it. The district court did decide it. My point here on appeal, Your Honor, is it ultimately didn't matter given the claim. Well, so I, I understand. I mean, you're basically arguing harmless. If it's error, it's harmless error. And we do have one case that adopts that view. But that was, as opposing counsel pointed out, that was where the district court had said, well, I would rule the same way. Normally, I would agree with you, and I'm, I'm intrigued by your legal argument because I think that's your best hook. But here, when we send it back down, there's actually a fundamentally different process that the district court looks at. I mean, I guess there's discovery and, I mean, is there no way that, that extra evidence would weigh in on this? Because normally, we just remand these. I don't see how it could, Your Honor. And remember, the, the plaintiff appellant briefed this as a de novo issue in the Rule 52 motion, right? That was, that was the position that the, the appellant took below was that this was de novo. And they put forward their best case. There, the, the, there's no suggestion. I mean, I, I heard it today, Your Honor. But, but practically speaking, there's no discovery that's going to change the question of what law applies to this plan and what law requires the insurance company to pay a penny more. There's a couple of things. One is, I mean, if it is, in fact, de novo, you know, if, that is a matter of California law, so we typically don't like to, like to, I don't like to, to try to set California law. But also, if you think the district courts are getting it wrong, it's And then there's a second thing. As I'm reading the district court's decision here, I mean, the district court spends a page, single-spaced, you know, talking about what the standard review is. Concludes it's abuse discretion. The heading is, defendants did not abuse this discretion. So I, basically, you're, you, if, if we assume, and I understand you're not agreeing that it's de novo, if we assume it's, it's de novo, you're really asking us to do the job the district court should have done. And, and why wouldn't it just be easier for us to send back and have the district court tell us if, if it reaches the same conclusion under that standard? It's just a matter of judicial economy, Your Honor. I think if there were some fact-finding or some weighing to be done below, that would make sense. My point is simply that this is a binary legal question. What is the law that applies that requires payment of a penny more? Plaintiffs took their best shot. They, they identified a law. The district court said it doesn't apply. The, the application, the, the decision about what law applies had no discretion or deference embedded in it whatsoever. That's a purely legal question. Well, let me say it's a purely legal question. It, it, it is abuse of discretion in the plan and the plan gets its, gets deference to its interpretation of the terms of the plan, right? So, so, I mean, I, I, am I, am I thinking incorrectly that if I'm the district court judge and the plan says this is what we think the law means, then I'm going to give some deference to that? Or, I guess. In the abstract, maybe, but, but that's not what happened here. The, the terms of the plan were not disputed. It wasn't as if the plaintiff said the plan means one thing and United said it means another and the district court agreed with United because of, of the abuse of discretion standard of review. The parties agree on what the plan says. It says you have to pay in accordance with, or as permitted by law. So then the question again turns, what law? Again, I, I think Your Honor's correct that there are situations in which remand might make sense. I, my point here is that the nature of the claim itself lends itself to a determination, even if you think the standard of review is wrong. So if we were to say that the standard of review was wrong, you think we could just also say we don't need to remand this because the legal predicate is not met? And, and that would distinguish it from the other cases where we have remanded? I, I think that's exactly what I, what I would do, Your Honor. Just as a matter, again, of judicial economy. Unless you're going to restart the whole case, which is not what should happen. The, the question is, even if you were going to remand, what is the claim? The claim is that we did not pay in accordance with a law. Plaintiff has argued the law. This court is well equipped, just like the district court, to decide if the law applies. It's a pretty easy call, actually. The plaintiff doesn't even contest it on appeal. The, the plaintiff relied solely on regulations that do not imply, apply to insurance companies. So, so that, you're, you're correct, Your Honor. I think that we've cited some out-of-circuit authority where courts can cut through all that and, and avoid a needless remand or sort of a wasteful remand when it's purely a legal question that the district court already decided. There's no indicia that deference was applied in making that legal determination. So we think that if you're, if you disagree with the standard of review, we think that affirmance is still warranted. I, I would like to talk about the standard of review because we think the district court got it right. Surprisingly enough, it doesn't come up a whole lot. We haven't seen cases. There's maybe five district court cases where this issue has been adjudicated. Most of them come out the way the district court did here. My, my colleague on the other side cites two California court of appeal decisions in footnotes that just make a vague reference to disability includes health insurance. Those cases did not address this statute at all. They didn't, they didn't grapple with the issue we're grappling with today. So there's just some, some generic statements of law. Only the five district court cases actually address this issue. And, and I would acknowledge your honor that there's some confusion and some murkiness in California law as to the nature of disability and health insurance. And I think that's what the legislature tried to clear up in 2001 with enacting section 106B of the insurance code. The purpose of that was recognizing that lay people think of health insurance and disability insurance differently. And frankly, courts ought to. Because disability insurance is income replacement for when someone is injured. Health insurance covers surgeries and doctor's visits and medicine. It's a very different thing. Well, I, I agree. And maybe this is just echoing what Judge Van Dyke said. I mean, I agree with that intuitive aspect to this, but how do you grapple with the specific California law that says health insurance is a type of disability insurance? Those are, those are the two cases I think you're referring to, the footnotes where the court said not dealing with this particular statute at all. They just said generically that health insurance is included within disability insurance. Right. But, but, but that seems to be an overriding theme within California insurance law. I don't disagree, your honor. And my point is, is that's why section 106B was enacted. And 106B was enacted to take effect for statutes that were, that post-date 2002, January 1, 2002, which includes the statute at issue here. And what 106B does is it separates health insurance from disability insurance. 106A has a very specific, so we have a statute here. The question is what does the term disability insurance mean in the statute? That's 10110.6. That's the statute we're talking about. 106A says it includes these various types of insurance, but in 106B it says that health insurance means a disability insurance policy that provides coverage for hospital or surgical benefits. So explain how you think that shows that there are different forms of  It is a little circular, your honor, I'll acknowledge. However, 106B, the predicate of that is for statutes that use the term health insurance. This statute we're talking about, 10110.6, does not use the term health insurance. So I would argue that the specific language in 106B is not what matters. What matters is that the legislature intended to separate disability from health. Sometimes, yeah, I can understand where, if you assume for a second, again, I'm not asking you to agree with this, but that health insurance, generally speaking, for whatever crazy reason in California, is a type of disability insurance. There's other types of disability insurance. So the circle of disability insurance is this big and health insurance is this big. There are times when the legislature is only going to want to regulate, perhaps in theory, just health insurance. There's also perhaps times when they may want to regulate the other types of disability insurance that don't include health. So it makes sense that there would be statutes that would separate health insurance out for those reasons. That doesn't necessarily mean that health insurance is not. You seem to be using that general factor that happens sometimes to say, well, see, there must be two different things. But it just doesn't follow logically in my view. Health insurance could be a subspecies of disability insurance, and there could be times when California singles out health insurance because for some reason it wants to. The latter is not somehow evidence that the former is not true logically. Understood, Your Honor. And I think, again, the easiest way to resolve this case in my favor is to look at 106 again. Again, we have a statute here. The statute we're trying to interpret is 10110.6 that uses the term disability insurance. Section 106 of the insurance code defines disability insurance to include a bunch of things that are not health insurance. And so that is a guide to how we interpret this statute. And I don't think this is in the papers, Your Honor, but there are statutes that California has enacted post-2002 that uses the terms disability and health insurance in the same statute. Now, of course, if disability already included health insurance, that wouldn't be necessary. And I'm thinking of Section 32 and 36 of the insurance code, which both refer to disability and health insurance in the same sentence, which, again, to me indicates that post-2002, the legislature, when it wants to separate, when it wants to include only disability, it says disability. When it wants to include both, it mentions both. Just like the model code did here, Your Honor, and we cite that in the papers for the background, is that there is a model code that has two different parts, one for disability, one for health. The legislature here enacted only the former and not the latter, and that is good evidence, especially with the backdrop of 106 of the insurance code, that we ought not to be broadly inferring that health insurance is included in a statute that does not refer to health insurance. And unless there are further questions, I'll step down. Thank you. All right, thank you.  So I just wanted to touch off where he left off, where my colleague left off. It mentions in the code commissioner's note for 106 specifically, and we do cite this in our brief actually, where it says, sickness and either accident or health changed to disability throughout the code. I think, Your Honors, I'm not going to leave the horse on that one. That goes to whether health insurance is disability insurance. Whether it is included within disability. So can you address this argument that assuming that you're right, that they're different, or that health insurance is a type of disability insurance, that there's a legal predicate that is just not satisfied? Because that's a little bit different than I'd understood coming in. You have to point to a law that suggests they couldn't do what they did, and you haven't done that. Because you've pitched it as a factual. Whether we remand or not, we've been discussing it as a factual remand. But if there's a legal predicate, why isn't that easier for us? Yes, Your Honor. So what you're saying is where the plan says we pay based on a particular law. Amount permitted by law. That's what the plan says. And their argument is, and, again, I think I agree with Nelson. It seems a little bit different than what I remember. I'm sure it's made up. I don't think it's waived or something. But their argument is, yeah, yeah, De Novo doesn't really matter because they could never win or they didn't win on amount permitted by law. So why? There would be no reason to remand even if you went on De Novo if that's decided. So I'll touch on all those things. So, first, as I mentioned, the M-surge care case, which we now know that amount permitted by law doesn't mean what they say it means. For sure not necessarily. It may not mean it at all, and it certainly doesn't mean it necessarily because the M-surge care case, if you read Judge Wilson's decision, you'll see that United acknowledges that the amount permitted by law in that instance means fair health. So we know that categorically, that amount permitted by law isn't necessarily an amount permitted by law. It doesn't mean that you have to refer to a specific law. You can take a look at that case, and you can see that Oxford in that case, which is an entity. What would your argument be that it does say amount permitted by law, so what law would they be not following? I don't think there is a law. I think that there is no law in California that requires – Doesn't that mean they win, though? Because they'd say, well, if there's no law, we only have to pay you based on an amount we negotiated, which we didn't negotiate an amount with you, or by an amount permitted by law. So there's a few things. First, there's other language in the plan. That's not the only language in the plan. There's other language in the plan which talks about – there's also the language about negotiation, which precedes – I think it either precedes it or it comes after it, where it says that it's an amount permitted – it's an amount we negotiate or an amount permitted by law. And also there's gap fillers as well. So if there's no amount permitted by law as a matter of contract law, you can fill the gap to say, okay, what's a reasonable amount to pay? I think that Judge Wilson did that, actually, in that MSurgeCare case. But also I want to point to a few facts that sort of support this as well, and which we mentioned in our brief, is that the facility was paid 57 percent of its bill. The anesthesiologist was paid 40 percent of their bill. The anesthesiologist alone was paid more than both the – and the facility was paid hundreds of – I mean, it was paid 50, 60, 100 times more than both the surgeons were paid together. There's clearly something more in the plan or more to the plan than just this – the language that we have here. And there's – and the language – there's language in the plan which specifically references this, and it's also, again, cited in our brief at page 34, where it talks about the plan states, you, referring to the beneficiary, will not pay more than the network cost-sharing amount. Well, that has a meaning also, Your Honor. So if they're not – if the patient is not supposed to pay more than the net cost-sharing amount, does that impose an obligation on United to actually negotiate, to try to reduce the responsibility of the patient? These are all questions that – And the district court didn't weigh in on any of those. She said – it says amount – it says an amount permitted by law. It's clear enough to me. That's what she said. Abuse of discretion standard. She was applying the abuse of discretion standard. It's an amount permitted by law. That's what it says in the plan. You haven't shown a law. Therefore, you lose. It was that simple. That's why she spent – as the court – as Your Honor mentioned, that's why – But that's not like a legal determination. But there's – if there were – if they could point – I would concede that if they were able to point to a particular law that they were following. But they don't – there is no particular law that they're following. This OCM program thing was not – is not a law that they were following. That's the point. You're over your time. Thank you, Your Honor. The case of Daniel Torres and Amsurge Care versus UnitedHealthcare Insurance Company is submitted and will next year. Argument on M. Lewis B. Edelson versus Travel Insurance International Inc. and United States Fire Insurance Company.
judges: IKUTA, NELSON, VANDYKE